McKinney, J.,
delivered the opinion of the court.
The complainants are the distributees of the estate of Thomas Reid, who died intestate in April 1836; and, in that character, brought this bill, on the 8th of June, 1848,/to recover from the defendant, Ragland, two slaves, Haywood and Simon, which are claimed to belong to said estate.
The questions to be decided, arise upon the following state of facts. - The slaves were sold_by the administrator, William H. Montgomery, in the year 1837, under color .of an order of the county court of Shelby county, for the purpose, as was alleged, of paying the debts of the estate.
The slave liaywood was purchased, at said sale, by one Thomas Harralson, Avho took and held possession of him till *502 his death, which occurred in June 1841, — a period of more than three years from the time of the purchase, — and after Harralson’s death, Bowler Cocke, a distributee of the estate, sold and delivered said slave to the defendant,'Ragland, on the 24th, of February, 1844. ‘
The slave Simon was bid oif, at said sale, for Montgomery, the administrator, 'and continued to remain in his possession until the 19th of May, 1842, when he sold and "conveyed him, by bill of sale, to the defendant. Ragland took possession of each of said slaves at the time of his purchase, and has held them ever since adversely to the complainants and all other persons.
In 1837 — the time of the sale by the administrator, under color of authority from the county court — the complainants were all infants, under the age of twenty-one years, as the weight of the proof establishes; but previous to the year 1842, — the time of the first purchase by the defendant, — one, if not more, of the complainants had attained majority, and was free from disability to sue. At the time of the commencement of this suit, in 1848, the disability of infancy still existed as to one or more of the complainants.
Upon these facts the question is, whether or not the ^complainants are barred from a recovery of said slaves by the statute of limitations.
It is assumed in the argument, on their behalf, that the sale by the administrator, under the order of the county court, was utterly void, and communicated no title to the purchasers; and that as the administrator was estopped, by his own sale, to sue for the recovery of the slaves, they have the right to do so. It is further assumed, that their cause and right of action accrued in 1837, upon the illegal sale of the administrator, which was a conversion of the slaves; and that, being ¿Aera all minors, they were not bound to sue until the disability of infancy was removed as to all; and that as some of them were *503 still under this disability, at the institution of the present suit, the statute of limitations has no application to the case. And in support of these several propositions, the principles declared by this court, in Shute vs. Wade, 5 Yerg. 17, and Herron vs. Marshall, 5 Humph. 443, are relied upon.
If the sale by the administrator could have had the effect in law, to communicate even a prima fade, title and right of possession to the purchaser; so as, by the transmission of such title and possession from the former to the latter, to have created a privity between them, the position insisted upon by the complainant’s counsel would, to say the least, seem highly plausible. Upon that hypothesis, it might with some show of reason be maintained, that as the defendant would stand in privity with the administrator; receiving his title and possession mediately or immediately from him, and entitled to unite his subsequent possession with the prior possession of the administrator, so as thereby, in virtue of the continuity of possession, to avail himself of the bar of the statute of limitations,- — it should be held to follow, on the other hand, that the defendant, in such case, would take the property thus transferred, affected with any right or cause of action existing against the administrator in' respect to it. ' But upon this merely hypothetical question, we mean to express no opinion, as the case does not call for it.
In the record before us a wholly different case is presented.
That the county court possessed no jurisdiction to order the sale of the slaves, is too clear to admit of doubt. This is obvious enough upon the proper construction of the .act of 1835, ch. 6, §§ 3-5; but there is no room left for construction by the subsequent act of the same session, (ch. 20, § 1,) which in express terms confers the jurisdiction of “petitions for the sale of slaves, by administrators, executors, or guardians,” concurrently upon the circuit and chancery courts. And such was the decision of this court, upon this question, in the case *504 of vs. Bradford's administrators, at Knoxville, several years ago.
This being so, and all sales of slaves, made by executors or administrators, contrary to the provisions of the act of 1827, ch. 61, being expressly declared void by that act, it necessarily follows, that the sale of the slaves in question by Montgomery, the administrator, was an absolute nullity, and conferred no title or right of possession whatever on the purchasers. And, as between wrong doers, there can be no privity, their possession cannot be united. The administrator, as well as the purchaser from him, and each successive purchaser, is a wrong doer as against the complainants; and eaeh must, stand upon his own naked possession, unaided by that of a* previous wrong doer; and unless his own possession has been) of such duration, and under such circumstances, as to entitle1 him to the protection of the statute, a recovery cannot be resisted upon that ground. 11 Humph. 457.
That the sale of the slave Haywood to Harralson, in 1837, was a conversion by the administrator, admits of no doubt; but whether the transaction, as respects the slave Simon, was so, is not so clear.
The purchase being simply void, and the possession of the slave remaining unchanged in the administrator, perhaps, he should be regarded as continuing to hold as administrator, that being the only character in which he could lawfully retain the slave. But whether he shall be regarded as having held said slave, from his pretended purchase in 1837, up to the sale to the defendant in 1842, in subordination, or in oppo-< sition, to the rights of the complainants, is a point not ma:' terial to decide, in considering the question, whether or not the defendant can avail himself of the statute of limitations; at most it would only settle whether the complainants’ cause of action, as against the administrator, accrued in 1837, or in *505 1842, a question of no practical consequence in this ease, as the administrator is not sued.
In a suit against the administrator, it is clear that the statute of limitations would be no defence, — and it is no less clear, that in the case of a purchaser from him in 1S37, the statute would be no more available. Because, as the complainants’' right of action was joint, and all were then minors, they were within the saving of the statute, and would so continue until all were free from the disability of infancy. And although, in such case, they might sue at any time during their disability, yet they would not be bound to do so.
But, as against a person who purchased after any one of the complainants had obtained the age of twenty-one years, a very different rule prevails. The principle applicable in such case, as laid down in Shute vs. Wade, is, that if one of several persons, who are entitled to a joint action, be free from disability at the time the cause of action accrued, all will be-barred, unless suit is brought within three years.
Within this principle the present case falls. The defendant wrongfully, as to the complainants, received into his possession, and has retained the slaves sued for, — the one since the 19th of May, 1842, and the other since the 24th of February, 1844, and both for a longer period than three years before this suit was instituted. The taking possession of th.e slaves was alike the inception of his wrong, and of the complainants’ right of action as to him. Pie was not liable to be sued for a conversion by a prior wrongful possessor. Each successive transfer of the possession of the slaves, was a new conversion on the part of the person taking possession, because it was an assumption of ownership in violation of the rights of complainants, and gave to them a new and independent cause of action. The defendant’s liability rests exclusively upon his own unlawful act, and from the time of the *506 commission of that act the statute commenced running, upon the principle above stated.
As to the application of the statute, in respect to the slave Simon, who was purchased directly from the administrator, there can be no question; and the case of the other slave, Haywood, though somewhat different in its facts, is not so in principle.
Although Harralson, during his life, had more than three years possession of said slave; yet, as we have already seen, he acquired no title by operation of the statute of limitations; because the complainants being all under disability at the time his wrongful possession commenced, were- within the saving of the statute. Consequently, nothing was transmitted to his personal representative or distributee; they held as wrongdoers also; and as less than three years elapsed from the commencement of their possession, until the sale of Haywood by Cocke, to the defendant, the latter acquired nothing by his purchase but the bare possession of the slave. 1 Humph. 46; 11 Humph. 457. The result is, that the right of the complainants is barred by the statute of limitations.
The decree of the Chancellor will, therefore, be reversed, and the bill dismissed.